UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| HOLLY DENISE GREEN, | ) |
| :--- | :--- |
| Plaintiff, | ) |
| v. | ) CAUSE NO. 1:17-cv-00318-SLC |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Holly Denise Green appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB").[1] For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. BACKGROUND

On January 18, 2013, Green filed an application for DIB, alleging disability as of December 4, 2012. (DE 15 Administrative Record ("AR") 8, 261-62). Green's application was denied initially and upon reconsideration. (AR 160-63, 166-74). At Green's request, a hearing was held before Administrative Law Judge Terry Miller (the "ALJ") on February 24, 2015. (AR 34-42, 174-84). However, the ALJ continued the hearing, and it was completed on May 19, 2015. (AR 76-134). At the hearing, Green, who was represented by an attorney, and vocational expert Robert Barkhaus testified. (AR 76). On July 31, 2015, the ALJ issued an unfavorable decision, finding that Green was not disabled. (AR 5-26). Green requested that the Appeals

---

[1] All parties have consented to the Magistrate Judge. (DE 21); *see* 28 U.S.C. § 636(c).

Council review the ALJ's decision (AR 32-33), and the Appeals Council denied her request, making the ALJ's decision the final, appealable decision of the Commissioner (AR 1-4).

Green filed a complaint with this Court on July 27, 2017, seeking relief from the Commissioner's final decision. (DE 1). In her appeal, Green alleges that the ALJ: (1) erred in his adverse credibility finding concerning her symptom testimony; (2) improperly rejected the opinion of state agency psychologist Dan Boen, PH.D., in determining Green's residual functional capacity ("RFC"); and (3) failed to support Green's mental RFC with substantial evidence. (DE 23 at 5-15).

## II. THE ALJ's FINDINGS

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether Green is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required him to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, see 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of

performing work in the national economy.[2]  *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id*.  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner.  *Id*. at 885-86.

At step one, the ALJ found that Green had not engaged in substantial gainful activity since her alleged onset date of December 4, 2012.  (AR 10).  At step two, the ALJ found that Green had the following severe impairments:  fibromyalgia; history of bilateral knee pain due to osteoarthritis and a meniscal tear requiring arthroscopic repair surgery; neck (and related headache) pain and low back pain due to cervical and lumber degenerative arthritis; rosacea/rash; obesity; depression; and anxiety.  (AR 10-11).

At step three, the ALJ concluded that Green did not have an impairment or combination of impairments severe enough to meet or equal a listing.  (AR 11-13).  Before proceeding to step four, the ALJ determined that Green's symptom testimony was "not entirely credible" (AR 16), and assigned her the following RFC:

> [T]he claimant has the [RFC] to perform sedentary work . . . (i.e. she can lift/carry/push/pull up to 10 pounds; sit at least 6 hours out of an 8[-]hour workday; and, can stand/walk, in combination, at least 2 hours out of an 8[-]hour workday).  However, she has the following additional limitations:  she needs a sit/stand option (which allows for alternating between sitting and standing up to every 30 minutes, if needed, but the positional change will not render the individual off task); only occasional climbing of ramps and stairs, balancing, stopping, kneeling, and crouching, but never climbing ladders, ropes, or scaffolds and never crawling.  In

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC, or what tasks the claimant can do despite her limitations.  20 C.F.R §§ 404.1520(e), 404.1545(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(5).

3

> addition, she needs to avoid concentrated exposure to hazards (i.e.
> operational control of dangerous moving machinery, unprotected
> heights, slippery/uneven/moving surfaces), and needs to work in an
> indoor, temperature[-]controlled environment. Mentally, [she]
> cannot understand or carry out detailed or complex job
> instructions, but can perform simple, repetitive tasks on a sustained
> basis (meaning 8 hours a day/5 days a week, or an equivalent work
> schedule), no sudden or unpredictable workplace changes; cannot
> perform tasks requiring intense/focused attention for prolonged
> periods; and needs work at a flexible pace (where the employee is
> allowed some independence in determining either the timing of
> different work activities, or pace of work).

(AR 13). Based on this RFC, the ALJ found at step four that Green could not perform her past relevant work. (AR 20). The ALJ considered the testimony of the vocational expert and other evidence in the record and determined at step five that Green could perform other jobs in the national economy that exist in significant numbers, and therefore, her application for DIB was denied. (AR 20-21).

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or

substitute its judgment for the Commissioner's. *Id*. Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id*. Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id*. (citing *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992)).

## IV.  ANALYSIS

### A.  The ALJ Provided Adequate Reasons for Rejecting Dr. Boen's Opinion

Green argues that the assigned RFC is flawed because the ALJ erred in rejecting the opinion of Dr. Boen, an examining psychologist, who opined that Green's short-term memory was significantly deficient and that she would have trouble concentrating on the job.

The RFC is "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week.  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996); *see Young v. Barnhart*, 362 F.3d 995, 1000-02 (7th Cir. 2004) (citations omitted); 20 C.F.R. § 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations.").  The RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence . . . ." SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545.  Although an ALJ may decide to adopt the opinions in a medical source statement concerning the ability of a claimant to perform work-related activities, the RFC assessment is an issue reserved to the ALJ. SSR 96-5p, 1996 WL 374183, at *4.

Dr. Boen examined Green on May 15, 2013.  (AR 437-42).  In the narrative of Dr. Boen's report, he observed that Green "has trouble concentrating and focusing."  (AR 438).  In assessing Green's memory, Dr. Boen asked her to recall three objects immediately and to do so again after five minutes.  (AR 440).  Initially, Green was able to recall all the objects, but after

five minutes she could not recall any. (AR 440). Then Dr. Boen listed five digits to Green and asked her to repeat them forwards and backwards. (AR 440). "Immediate recall was five digits forward and four digits backward." (AR 440).

Dr. Boen concluded that "[Green's] concentration was mildly deficient. Her long-term memory was mildly deficient. Her short-term memory was significantly deficient. Her immediate recall was normal." (AR 440-41). Dr. Boen opined that "Green could understand what was asked to do on a job but she would not be able to remember it. She would have trouble concentrating and staying on task." (AR 441).

On June 11, 2013, Vitjay Kamineni, M.D., saw Green for a "disability physical," noting that her chief complaint was bilateral knee and right shoulder pain. (AR 442-46). Dr. Kamineni reported that Green's remote and recent memory were intact, and that she had a normal attention span. (AR 446). A mental status exam showed "appropriate mood and affect"; the ability to articulate well; and normal speech or language, rate, volume, and coherence. (AR 446).[3]

The ALJ rejected Dr. Boen's opinion that Green would not be able to remember instructions in the workplace, and that she would have trouble concentrating and staying on task, citing Dr. Kamineni's report that Green's "remote and recent memory [were] intact" and that her attention span was normal. (AR 18-19). The ALJ also noted that other hospital records described Green as having "normal judgment and thought content." (AR 19).

Green contends that the ALJ's proffered reasons for discrediting Dr. Boen's opinion are flawed because: (1) as a psychologist, Dr. Boen's opinion was entitled to greater weight than Dr. Kamineni's opinion; and (2) Green's concentration and memory are not related to her judgment

---

[3] The ALJ assigned no weight to the "Medical Source Statement" in Dr. Kamineni's report. (AR 19 (referencing AR 446)). However, Dr. Kamineni's opinions regarding Green's concentration and memory are recorded in his report separate from the Medical Source Statement, and therefore, the ALJ did not reject those findings in Dr. Kamineni's report. (*See* AR 446).

and thought content.

Regarding Green's first argument, she is correct that the ALJ should generally assign more weight to the opinion of a medical professional with expertise regarding an impairment. *See* 20 C.F.R. § 404.1527(c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion."); *see also White v. Barnhart*, 415 F.3d 654, 658-60 (7th Cir. 2005) (recalling that each medical opinion, other than a treating physician's opinion entitled to controlling weight, must be evaluated pursuant to factors articulated in 20 C.F.R. § 404.1527(c) to determine the proper weight to apply to it). At the same time, "[t]he administrative law judge is not required or indeed permitted to accept medical evidence if it is refuted by other evidence—*which need not itself be medical in nature . . . .*" *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009) (quoting *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995)). To that point, it is well established that a medical source opinion may be credited or discredited based on whether it is internally consistent or consistent with other evidence of record. *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ("The ALJ also properly discounted Dr. Cusack's opinion due to lack of consistency." (citing 20 C.F.R. § 404.1527(c)(4))); *Clifford*, 227 F.3d at 871 (explaining that medical evidence may be discounted if it is internally inconsistent); *Hampton v. Berryhill*, No. 2:17-CV-62-PRC, 2018 WL 1101985, at *6 (N.D. Ind. Mar. 1, 2018) ("[T]he more consistent an opinion is with the record as a whole, the more weight [is given] to that opinion." (second alteration in original) (citation and internal quotation marks omitted)).

In this case, the ALJ rejected Dr. Boen's opinion that Green's short-term memory was "significantly deficient" and that she would have trouble "concentrating and staying on task," finding it was inconsistent with Dr. Kamineni's opinion that Green's "recent memory was intact"

7

and that she had "a normal attention span." (*See* AR 18-19 (referencing AR 440-41, 446)). Furthermore, the state agency psychologists who reviewed Green's record opined that she had only "moderate difficulties" in maintaining concentration, persistence, or pace. (AR 140, 152). Thus, the ALJ rejected Dr. Boen's opinion regarding Green's concentration and memory because it was inconsistent with other medical evidence of record. Resolving such conflicts in crafting the RFC is the province of the ALJ. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995).

Green's argument to the contrary focuses on the weight that the ALJ assigned to Dr. Boen's opinion, amounting to a plea to reweigh the evidence—a task which the Court cannot do. *See Clifford*, 227 F.3d at 869 (recalling that courts "do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner" (citations omitted)).

Next, Green contends that the ALJ erred by discrediting Dr. Boen's opinion based on hospital reports that she had "normal judgment and thought content." (AR 19). Green is correct that the ALJ did not explain how "judgment and thought content" are related to her concentration and memory. To that extent, the ALJ erred by not "build[ing] an accurate and logical bridge from the evidence to his conclusion . . . ." *Chase v. Astrue*, 458 F. App'x 553, 556-57 (7th Cir. 2012) (citations and internal quotation marks omitted). However, because the ALJ provided other good reasons for rejecting Dr. Boen's opinion as to Green's ability to concentrate and recall instructions, this error is harmless. *See Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000) (explaining that harmless errors are those that do not ultimately impact the outcome of the determination).

Therefore, the ALJ provided sufficient justification for rejecting Dr. Boen's opinion regarding Green's concentration and memory in assigning her mental RFC, and his decision will

8

not be disturbed.

### B. The RFC Is Supported by Substantial Evidence

Green's next argument is that the ALJ did not provide adequate support for the mental limitations assigned in the RFC. Green asserts that the ALJ: (1) rejected all medical health opinions of record regarding her mental limitations such that the RFC is not supported by any medical evidence of record; and (2) the ALJ did not account for limitations caused by her sleep apnea and insomnia.

Contrary to Green's first argument, the ALJ adequately supported the limitations assigned in the mental RFC. For example, the ALJ assigned great weight to the state agency psychologists' opinions that Green had mild limitations with activities of daily living and social functioning; moderate limitations in maintaining concentration, persistence, or pace; and moderate limitations in understanding and remembering detailed instructions. (AR 19 (referencing AR 140, 152)). The ALJ also assigned partial weight to Dr. Boen's conclusions that Green's concentration and long-term memory were mildly deficient, her immediate recall was normal, and her "fund of information and level of intelligence were normal." (AR 19 (referencing AR 440-41)). Finally, the ALJ cited Dr. Kamineni's report that Green has normal attention span and that her memory is intact. (AR 19 (referencing AR 446)).

Furthermore, other than one finding in Dr. Boen's report regarding Green's memory and concentration, which was discussed *supra*, Green does not identify any medical source of record who would support a more restrictive mental RFC. It is axiomatic that Green, as the claimant, bears the "burden of supplying adequate records and evidence to prove [her] claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). In failing to present evidence that her mental limitations

are more severe than determined by the ALJ, Green has failed to satisfy that burden. *See Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." (citation omitted)).

Green's second argument fares no better. Although Green testified that she experiences trouble sleeping and must nap for two hours every day, she did not testify that these conditions inhibit her ability to work. (*See* AR 116-17). Similarly, upon examination in March 2014, August 2014, and March 2015, Green reported not sleeping well at night and/or being fatigued during the daytime, but she did not report any difficulties working or completing daily activities as a result. (*See* AR 568, 576, 578, 744). Even on appeal, Green does not point to testimony or evidence of record indicating that her sleep apnea or insomnia limits her ability to work.

In sum, the ALJ provided adequate support for the mental limitations assigned in the RFC, and therefore, the Court will not order a remand of his decision.

### C. The Credibility Determination Is Not Flawed

In her last argument, Green asserts that the ALJ erred by finding that her symptom testimony was not credible. Specifically, Green argues that the ALJ: (1) did not consider evidence that she struggles to accomplish daily activities; and (2) erroneously discredited her testimony based on a lack of supporting evidence in the record.

An ALJ's credibility determination is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness. *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *Nelson v. Apfel*, 131 F.3d 1228, 1237-38 (7th Cir. 1997). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating

"an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), his determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435; *see Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness"); *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1995) ("[Because] the ALJ is in the best position to observe witnesses, [courts] usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong." (citations omitted)).

1. Daily Activities

First, Green argues that the ALJ ignored evidence that she struggles in performing daily activities. An ALJ may consider the "consistency of the individual's statements with other information in the case record, including reports and observations by other persons concerning the individual's daily activities, behavior, and efforts to work." SSR96-7p, 1996 WL 374186, at *6 (July 2, 1996).[4] However, the Seventh Circuit has "cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (collecting cases). The ALJ must be cognizant of the "differences between activities of daily living and activities in a full-time job . . . ." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

At the administrative hearing, Green testified that she gets anxious around crowds of unfamiliar people and that some days her anxiety prevent her from concentrating or "think[ing]

---

[4] Social Security Ruling 96-7p, was superseded by Social Security Ruling 16-3p, 2016 WL 1119029 (Mar. 16, 2016), in March 2016, but Social Security Ruling 96-7p governed at the time the ALJ issued his decision. Accordingly, SSR 96-7p applies to this case.

11

straight." (AR 107-08). She testified that due to her mental impairments, her husband does the gardening, and her daughter usually cooks her meals, or she receives assistance in preparing meals. (AR 110-11, 113). Green testified that she folds laundry, but she needs her husband to take the laundry out of the washer and put it in the dryer. (AR 114-15). Green also testified that she takes care of her own personal hygiene. (AR 111-12).

Green stated that she goes grocery shopping for about 20 minutes every other week accompanied by her daughter. (AR 114). She looks at Facebook on a computer for about 10 minutes once every couple of days; reads a newspaper every day but does not read any books; and watches television but does not watch programs that are longer than a half-hour, and sometimes discusses the shows with her husband. (AR 112-14). Green testified that she likes to go fishing but she can only do so on "good days." (AR 116).

The ALJ explained why he did not find Green's testimony entirely credible at step three and in crafting the RFC. For example, the ALJ discredited Green's testimony regarding her difficulties concentrating and focusing, her struggles with social anxiety, and her difficulties in daily living. The ALJ did so because Green stated that goes shopping with her daughter (AR 12, 17, 18); she takes care of her own hygiene (AR 12); she regularly reads the newspaper (AR 12); and she is able remember plot points from a half-hour long television program (AR 12). The ALJ also noted Green's testimony that her daughter "may make breakfast" in the mornings; her daughter helps her cook; and her husband cares for their garden. (AR 12). Finally, as discussed *infra*, the ALJ found that medical evidence of record contradicted Green's testimony regarding the severity of her mental impairments.

To summarize, the ALJ was clearly aware of Green's testimony that she experiences some difficulties in performing daily activities, as he reviewed her testimony at step three and in

12

crafting the RFC. *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-69 (7th Cir. 2010) (reading the ALJ's decision does not require "tidy packaging"; rather, the Court reads it "as a whole and with common sense" (citations omitted)). Green's argument that the ALJ erred by not discussing all the difficulties described in her testimony fails because the ALJ is not required to "mention every snippet of evidence in the record," where, as here, he connects the evidence to the conclusion. *Arnett*, 676 F.3d at 592. Therefore, the ALJ's consideration of Green's daily activities does not require a remand.

> 2. The Objective Medical Evidence

Finally, Green argues that the ALJ erred in discrediting her testimony because it was not supported by objective medical evidence of record. Green is correct that "an ALJ may not discredit testimony of pain solely because there is no objective medical evidence to support it." *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). However, again, "[t]he administrative law judge is not required or indeed permitted to accept medical evidence if it is refuted by other evidence—*which need not itself be medical in nature . . . .*" *Simila*, 573 F.3d at 515 (citation and internal quotation marks omitted).

Here, the ALJ's adverse credibility determination was based on more than a lack of supporting medical evidence. The ALJ cited Dr. Kamineni's report that Green had "normal social interaction . . . normal concentration for her recent and [her] remote memory being intact," which contradicts Green's testimony regarding her social anxiety and her inability to concentrate. (*See* AR 18 (referencing AR 446)). Additionally, as discussed *supra*, the ALJ determined that Green's daily activities did not support the assignment of more severe limitations.

In any event, the assigned RFC allows for the performance of simple, repetitive tasks; a

13

flexible pace; no tasks requiring intense focus or attention for prolonged periods; and no sudden or unpredictable workplace changes. (AR 13). Thus, the "ALJ did not totally discount [Green's] testimony regarding" the limitations described in her testimony. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007). Accordingly, the ALJ's credibility determination concerning Green's symptom testimony was not "patently wrong," and will be upheld. *Powers*, 207 F.3d at 435.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Green.

SO ORDERED.

Entered this 29th day of November 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge